Opinion of the Court.
THE only question in this cause depends upon the validity of the following entry on treasury warrants, which was sustained by the court below against an elder grant:
“ December 4th, 1782 — Howell Lewis, sen. assignee of Lewis Taylor and Robert Lewis, enters, on three treasury warrants, 3,500 acres, on the dividing ridge between Grassy creek and the middle fork of Bank-Lick creek, beginning at the top of tlie ridge on thetrace leading to Dry creek,- from the Forks of Licking, at a red-oak, with many shops on it, marked I. F. and to run S. W. 800 poles, and thence N. W. at right angles to said line, from both ends, as far as will include the quantity.”
*74 It is shown, that the trace claimed, was called Logan’s trace; that an army marched along it, commanded by Col. Logan, a few weeks before the entry was made, and that the tr.ace was therefore notorious; and hence it is insisted that the trace is not designated by a proper name. It has never been held necessary, that a locator should adopt the most notorious name. It is sufficient, ifhe uses that description which does not deceive, but substitutes the most notorious name, which he has omitted, by another name. The Forks of Licking were very notorious, and perhaps might be sustained on historical evidence. From this point the trace was to start. It is not shown that there were other traces lending from the same point; but if other traces are presumed to exist, the one intended is to lead to Dry creek. Here it is contended that Dry creek was ■notorious at the date,of the entry. But two witnesses speak of it. One thinks it did not take the name of Dry creek, until 1784, when he conceives the party-then composing the company, first gave it the name; the other speaks positively of t he name as notorious before the date of the entry. Here the positive evi-dencc is in favor of the claim. But it is not necessary to rely on it; for, admitting that the call for Dry creek is doubtful or uncertain, still, by the entry, the trace is to be that one which is to pass across or along the dividing ridge between Grassy creek and one of the arms of Bank-Lick. It is shown, that such a ridge passes up between these parallel creeks, and their names are proved to have been notorious at the date of the entry. There- is, then, enough in the entry to distinguish, not only the trace, but the ridge intended. The trace crosses this ridge; and on the ridge, therefore, the tree must be sought.
Here we arrive at the greatest difficulty in this entry. According to principles settled by numerous decisions, the tree is an indispensable requisite, and must operate as the lcey-stone. Without it, the entry must fail. Th,e expressions seem to fix the tree where the trace and apex of the ridge come together. The tree claimed, stands upwards of two hundred poles from the highest point of the ridge, nearer to Grassy creek— though it is shown that the ridge there, is nearly as high as at the other point, and that in travelling the traca, it appears like the top of the- ridge. One witness dé1 *75 poses, that he saw/thik tree, then to all appearance fresh marked, in the month of October next preceding the date of the entry, when marching with the army who made the trace, commanded by Col. Logan. This is the only witness who saw the tree before the entry was made. This same witness went in company .with tjie surveyor and two others, whose depositions are taken in this cause, to execute the survey upon the entry, in 1788. The party pursued the trace from one creek to the other, a distance of about three miles and one quarter, and did not find the tree. They returned the same way, for a further search, and the surveyor took the trace and the rest spread themselves on each side, and the surveyor found the tree now claimed, from which he executed the survey. There is nó contrariety among these witnesses as to the many tomahawk chops then-existing on the tree; but there is considerable discrepancy between the witnesses and the entry. The only witness who had seen the tree and acted as pilot at the: date of the survey, deposes in this cause, that he is well, satisfied the tree he saw in ‘1782, was the same they found in 1788, the site of which, the tree being now gone, he showed the surveyor in this suit. He states, in his deposition taken in this suit, that the letters marked on the .tree were 1. F. as to the I. he is certain. In a- deposition taken to perpetuate testimony, in the year 179G, he states the letters were then as he saw them in 1782, and the commissioners who acted on that occasion, report the letter H. then existing. In another suit, in. which his deposition was previously taken, the same witness states, that it was his impression, and had been at other times, that the letters were the initials-of John Martin’s name. He was only positive as to- the existence of the I. it being the initial of his o-w& name.; which, he had been accustomed to make; but:that he is unlettered, and did not wholly understand the alphabet.. The two: witnesses who attended with the su rveyorv ex? cep.t the aforesaid pilot, depose, in their depositions. taken in this su-it, that the letters then fo^d, which; appeared very ancient, were I. F.; but in‘their depositions which had been previously taken in another suit, they both state that the letters which they remember to have seen in 1-788, were the initials of the name of Howell Lewis, united. The surveyor does not state what were the letters which h.e found on *76 the tree. He states he then discovered that the tree stood nearer to Grassy creek than the top of the ridge; but that the tree found better corresponded with the entry than any other he could find, and was so nearly correct, that he then supposed it to be the tree designated by the entry. Two of the other witnesses, who differ at the different times that their depositions were taken, as to what kind of letters the tree had on it at the date of the survey, state that the entry was then produced and compared with the letters on the tree, and that those called for and those found corresponded precisely.
The circumstance of this tree not being found on tire top of the ridge, but at the distance of 200. poles therefrom, might perhaps be overlooked in this case, without a greater extent of lenity towards the claim, than has been allowed in other cases; especially, when the tree stands on ground which appears, in travelling, like the top of the ridge, not much lower than the highest point; for the tree claimed is shown to be so near the trace, as to be easily discoverable from it. The distance of search on the trace required by this indulgence, would not be unreasonable, in search of such ay object. But it must be admitted/ that the departure from the top of the ridge might excite some doubt, and does require greater precision in the correspondence of the tree with the entry. If the position be not correct, greater exactness in other description must be requisite. In this case, however, the correspondence in other respects is wanting. The strongest proof of correspondence, is, that the party surveying the claim then compared the entry and tree, and found an agreement, This, however, might have happened by an erroneous copy, or by the apparent change in the letters by moss-growing over them, which is proved to be the fact. We cannot but say, that the witnesses have paralized their testimony, by making the letters different on different occasions. The report of the commissioners, however, made in perpetuating testimony, turns the scale in favor of those depositions which state the letters to be H. L. ; or if this conclusion is not correct, one no more favorable to the claim can be drawn, and that is, that there is such uncertainty in the memory of those witnesses, as to render it uncertain what letters were really marked on the tree. If the letters were H. L, *77 they vary too much from the entry, to sustain it. If it is uncertain what the letters were, the result must be the ■same, when the tree is essential, and does not stand where the entry'alleges.
The decree must, therefore, be reversed with costs, and the cause remanded, with directions there to dissolve the injunction and dismiss the bill with costs.